**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN DOE, an individual; et al., | No. 21-56259 |
| Plaintiffs-Appellants, | D.C. No. 3:21-cv-01809-CAB-LL |
| v. | Southern District of California, San Diego |
| SAN DIEGO UNIFIED SCHOOL DISTRICT; et al., | ORDER |
| Defendants-Appellees. | |

Before: BERZON, IKUTA, and BENNETT, Circuit Judges.

Order by Judges BERZON and BENNETT; Dissent by Judge IKUTA.

Appellants, a 16-year-old high school student and her parents, filed an emergency motion for an injunction pending appeal, seeking to enjoin San Diego Unified School District ("SDUSD") from requiring compliance with a student vaccination mandate. On November 28, 2021, we granted Appellants' motion in part. We ordered that an injunction shall be in effect only while a "per se" deferral of vaccination is available to pregnant students under SDUSD's student vaccination mandate, and that the injunction shall terminate upon removal of the "per se" deferral option for pregnant students.

On November 29, 2021, appellees filed a letter and supporting declaration

from Interim Superintendent Lamont Jackson explaining that the deferral option for pregnant students has been removed from the mandate. Appellants' responsive letter does not dispute that the pregnancy deferral option has been validly removed.

Given the removal of the "per se" deferral option for pregnant students, the injunction issued in the November 28, 2021 order has terminated under its own terms. This order provides our reasoning for why an injunction pending appeal is not warranted as to the now-modified student vaccination mandate.

***

SDUSD's student vaccination mandate provides that students who are 16 years or older as of November 1, 2021, and who are not fully vaccinated against COVID-19, will not be permitted to participate after January 24, 2021 in on-site education or extracurricular activities without a qualified exemption or conditional enrollment.[1]

SDUSD allows for medical exemptions to the mandate as well as conditional enrollment in on-site education for 30 days for certain categories of newly enrolling students (students who are homeless, in "migrant" status, in foster care,

---

[1] Some record materials refer to January 21 as the start date for the spring semester, but it appears that date has now been amended to January 24. *See Covid-19 Status: Safety Comes First*, San Diego Unified Sch. Dist., https://sandiegounified.org/covid-19_status (last visited Dec. 3, 2021).

or in military families).[2]  The mandate also provides certain procedural protections and accommodations to students with Individualized Education Programs (IEPs), to comply with statutory "stay put" requirements.  *See, e.g.*, 20 U.S.C. § 1415(j).  Previously, the mandate provided for a "per se" pregnancy deferral, under which a pregnant student could defer vaccination until after pregnancy; as noted, the "per se" pregnancy deferral no longer exists.  SDUSD does not allow for an exemption to the mandate on the basis of religious belief.

Appellants allege that the student vaccination mandate violates the Free Exercise Clause, both facially and as applied, by failing to exempt Jill Doe, the high school student plaintiff, in light of a religious belief that prohibits her from taking any of the available vaccines,[3] and by treating "comparable secular activity

---

[2] These categories were drawn from California state law provisions applicable to other immunizations required for students.  *See, e.g.*, Cal. Educ. Code §§ 48204.7, 48850, 48852.7, 49069.5, 49701; Cal. Health & Safety Code § 120341.

[3] The complaint and emergency motion explain that Jill Doe's reason for abstaining from vaccination is that "[a]ll three of the[] vaccines have been manufactured or tested using material derived from stem cell lines from aborted fetuses."  The one vaccine approved for use in 16-year-olds is the Pfizer-BioNTech vaccine. *See COVID-19 Vaccines for Children and Teens*, Ctrs. for Disease Control & Prevention (Nov. 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/children-teens.html.  That vaccine is not manufactured using stem cells.  Third parties tested the vaccine using fetal cell lines, which are laboratory-grown cells originally derived from two fetuses aborted in 1973 and 1985. *See, e.g.*, *COVID-19 Vaccine and Fetal Cell Lines*, L.A. Cnty. Dep't of Pub. Health (Apr. 20, 2021), http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf.  Jill Doe explains that her Christian faith prevents her from using any vaccines that depend

more favorably than religious exercise" through the granting of medical exemptions, conditional enrollments for certain categories of students, and procedural protections for students with IEPs.  *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam).

To determine whether to grant an injunction pending appeal, this court applies the test for preliminary injunctions.  *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006).  "A plaintiff seeking a preliminary injunction must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit applies a "sliding scale" approach to preliminary injunctions such that a preliminary injunction can issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharping in [plaintiff's] favor.'"  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (alteration in original); *see*

---

on use of fetal cell lines at any stage of their development.  We may not and do not question the legitimacy of Jill Doe's religious beliefs regarding COVID-19 vaccinations.  *Cf. Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018).

*also id.* at 1131–35 (explaining that the sliding scale test "remains viable after the Supreme Court's decision in *Winter*").

The Supreme Court has held that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (citations omitted). "[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice . . . . A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993).

Appellants have not demonstrated a sufficient likelihood of success in showing that the district court erred in applying rational basis review, as opposed to strict scrutiny, to the student vaccination mandate.[4]

---

[4] We note that although a "published motions panel order may be binding as precedent for other panels deciding the same issue," its analysis is not binding on panels deciding distinct issues. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021). "In deciding whether the court should stay the grant or denial of a preliminary injunction pending appeal," for example, "the motions panel is predicting the likelihood of success of the appeal." *Id.* Put differently, the

First, in our view, the plaintiffs have not raised a serious question as to whether the mandate is neutral. The terms of the mandate do not make any reference to religion or "a religious practice without a secular meaning discernable from the language or context." *Lukumi*, 508 U.S. at 533 (describing minimum requirement of facial neutrality). Looking beyond facial neutrality, Appellants have not shown a likelihood of establishing that the mandate was implemented with the aim of suppressing religious belief, rather than protecting the health and safety of students, staff, and the community. *See id.* at 533–42 (examining direct and circumstantial evidence in the record to determine the object of a law).

Second, the plaintiffs have not raised a serious question as to whether the mandate is generally applicable. The only currently enrolled students who are fully exempt from the requirement to be vaccinated for on-site learning and extracurricular activities are students who qualify for a medical exemption. The medical exemption is limited to students with contraindications or precautions recognized by the Centers for Disease Control and Prevention or the vaccine

motions panel is forecasting how the merits panel might rule, and its reasoning is "an additional step removed from the underlying merits." *Id.* at 660–61. "Such a predictive analysis should not, and does not, forever decide the merits of the parties' claims." *Id.* at 661. "This sort of pre-adjudication adjudication would defeat the purpose of a stay, which is to give the reviewing court the time to act reasonably, rather than doling out justice on the fly." *Id.* (citation omitted) (internal quotation marks omitted). Because this order is similarly "predicting the likelihood of success of the appeal," our legal analysis is "persuasive but not binding" on future merits panels. *Id.* at 660–62.

6

manufacturer, and the request must be certified by a physician. Limitation of the medical exemption in this way serves the primary interest for imposing the mandate—protecting student "health and safety"—and so does not undermine the District's interests as a religious exemption would.[5] *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) ("A law . . . lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."); *Tandon*, 141 S. Ct. at 1296 ("[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue."); *Smith*, 494 U.S. at 874, 878–82 (state law prohibiting possession of a controlled substance, but containing exception for substances prescribed by a medical practitioner, was generally applicable); *We The Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5121983, at *12 (2d Cir. Nov. 4, 2021) (medical exemption from healthcare worker COVID-19 vaccination mandate differed from religious exemption in that mandating the vaccination of people with medical

---

[5] The dissent insists on a narrower formulation of SDUSD's asserted interest, characterizing that interest as "ensur[ing] 'the safest environment possible for all students and employees' by preventing the transmission and spread of COVID-19." *See, e.g.*, Dissent at 8. Although promoting a safe school environment is undoubtedly one of SDUSD's interests in promulgating both a student and employee vaccination mandate, the interest the District emphasizes most frequently in the record with respect to the student vaccination mandate is protecting the "health and safety" of students.

7

contraindications or precautions "would not effectively advance" the government's interest in "protecting the health" of such individuals).

Additionally, although the record does not disclose the number of students who have sought or are likely to seek a medical exemption, if that number is very small and the number of students likely to seek a religious exemption is large, then the medical exemption would not qualify as "comparable" to the religious exemption in terms of the "risk" each exemption poses to the government's asserted interests. *See We The Patriots USA, Inc.*, 2021 WL 5121983, at *12–13. Moreover, some of the medical exemptions are likely to be "limited in duration," unlike a religious exemption. *Id.* at *12. SDUSD's medical exemption form expressly states that "[n]o medical exception is permanent" and that any such exemption is valid only until the earliest date out of a list of dates, such as "[t]he end date specified by the physician" who fills out the exemption form. Students with health issues justifying a longer-term medical exemption will need to reapply for an exemption each year. Accordingly, although "it may be feasible for [SDUSD] to manage the COVID-19 risks posed by a small set of objectively defined and largely time-limited medical exemptions," "it could pose a significant barrier to effective disease prevention to permit a much greater number of permanent religious exemptions." *Id.*; *see also Lukumi*, 508 U.S. at 542–43 (the requirement of general applicability prohibits imposition of a burden only on

8

conduct motivated by religious belief, while failing to prohibit nonreligious conduct "that endangers [legitimate governmental] interests in a similar or greater degree").

The 30-day "conditional enrollment" period for the specified categories of newly enrolling students also does not raise a serious question concerning the mandate's general applicability. As was the case with currently enrolled students like Jill Doe,[6] conditionally enrolled students are simply given a grace period to provide documentation proving that they have been vaccinated before they may continue with on-site education; they are not exempted from the vaccination requirement itself. Thus, Appellants have not demonstrated that the mandate treats conditional enrollees more favorably than students who invoke religious beliefs as their ground for remaining unvaccinated. *See Tandon*, 141 S. Ct. at 1296 (strict scrutiny triggered whenever government regulations "treat *any* comparable secular activity more favorably than religious exercise"). And, in line with the above

---

[6] Currently enrolled students and their families were notified about the student vaccination mandate by letter on September 29, 2021. The letter advised students to receive their first dose of the vaccine by November 29, 2021 and their second dose by December 20, 2021. The letter also notified students that if they are not fully vaccinated prior to the start of the semester—which will occur on January 24, 2021—then they will be transitioned into a remote-learning "alternative education program" and will not be permitted to participate in extra-curricular activities. Currently enrolled students therefore received a grace period of well over 30 days in which to receive their vaccinations and provide documentation of those vaccinations.

9

analysis, the conditional enrollment period is both of temporary duration and of limited scope, and so does not undermine SDUSD's asserted interests in student health and safety the way a religious exemption would. *See Lukumi*, 508 U.S. at 542–43; *We The Patriots USA, Inc.*, 2021 WL 5121983, at *12–13.

The dissent recognizes that in-person attendance by unvaccinated students with an IEP is not comparable to in-person attendance by students with religious objections to vaccination because federal law—the IDEA—requires that a school "follow certain procedures before it can bar students [with IEPs] from in-person attendance." Dissent at 6 n.3. Although California does not yet require proof of COVID-19 vaccination for school attendance as a matter of state law, the Governor has announced plans to direct the California Department of Public Health to adopt such a requirement in the near future. *See California Becomes First State in Nation to Announce COVID-19 Vaccine Requirement for Schools*, Off. of Governor Gavin Newsom (Oct. 1, 2021), https://www.gov.ca.gov/2021/10/01/california-becomes-first-state-in-nation-to-announce-covid-19-vaccine-requirements-for-schools/; *see also* Cal. Health & Safety Code § 120335 (requiring student immunization for a list of diseases as well as "[a]ny other disease deemed appropriate by the department, taking into consideration the recommendations of" several health advisory bodies). At that point, SDUSD's policy of conditional enrollment for students who are homeless, in

"migrant" status, in foster care, or in military families will also be required by law. See Cal. Educ. Code §§ 48204.7, 48850, 48852.7, 49069.5, 49701; Cal. Health & Safety Code § 120341. For now, it parallels the requirements set by state law for other vaccines. *Id.*

Plaintiffs also take issue with the student vaccination mandate's procedural provision regarding students with IEPs. SDUSD maintains that once an IEP is in place, the Individuals with Disabilities Education Act requires SDUSD to implement the IEP. *See* 20 U.S.C. § 1415(j). The IEP cannot be changed unilaterally; it may be adjusted only through a process that provides the student with certain procedural protections. Until that process is complete, the IEP "shall remain" in effect. *Id.* The student vaccination mandate accounts for that legal requirement by declining to set a universal vaccination deadline for students with IEPs and by instead permitting conditional enrollment. This provision of the mandate is not comparable to a religious exemption. It provides temporary procedural protections to students with IEPs but does not grant them a permanent exemption from the mandate. Additionally, any delay in vaccination caused by this provision is likely to be brief and limited to a small number of students. Thus, for the reasons explained above, it is unlikely that the "risk" to the government's asserted interest posed by this provision would qualify as "comparable" to the risk

posed by a religious exemption provision. *We The Patriots USA, Inc.*, 2021 WL 5121983, at *12–13.

Moreover, in light of the rigidity of the medical exemption and the limited time period for conditional enrollees to obtain records or vaccine doses—which does not appear to be subject to discretionary extension—there is no "mechanism for 'individualized exemptions'" in this case. *See Does 1–3 v. Mills*, --- S. Ct. ----, 2021 WL 5027177, at *2 (Oct. 29, 2021) (Gorsuch, J., dissenting from the denial of an application for injunctive relief) (quoting *Lukumi*, 508 U.S. at 537); *Fulton*, 141 S. Ct. at 1878 (concluding that "the inclusion of a formal system of entirely discretionary exceptions" rendered the regulation at issue not generally applicable); *We The Patriots USA, Inc.*, 2021 WL 5121983, at *14–15.

Finally, plaintiffs gesture toward the inclusion of a religious accommodation procedure in SDUSD's *employee* vaccination mandate as evidence that the *student* vaccination mandate is not generally applicable. But that procedure does not apply to students and, in any event, is not a religious *exemption*. To the contrary, it is a legally required interactive process that may ultimately result in a denial of the requested accommodation. The EEOC has released guidance explaining that, although Title VII prohibits employment discrimination based on religion, an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature

12

or is not sincerely held, or on the ground that such an exemption would pose an "undue hardship" by burdening "the conduct of the employer's business" through increasing "the risk of the spread of COVID-19 to other employees or to the public." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at L.2 to L.3, U.S. Equal Emp. Opportunity Comm'n (Oct. 25, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L. The EEOC's guidance also suggests that SDUSD was right to circulate a religious accommodation form and information sheet. *Id.* at L.1 ("As a best practice, an employer should provide employees . . . with information about whom to contact, and the procedures (if any) to use, to request a religious accommodation.").

Appellants' emergency motion therefore fails to raise a serious question as to whether the vaccination mandate is not neutral and generally applicable. Accordingly, Appellants have not demonstrated a likelihood of success in showing that the district court erred by applying rational basis review. And Appellants do not argue that they are likely to succeed on the merits of their free exercise claim if rational basis review applies. *See Parents for Privacy v. Barr*, 949 F.3d 1210, 1238 (9th Cir. 2020) (stating standard for rational basis review).

Because Appellants have not established serious questions going to the merits of their free exercise claim, we need not consider the remaining factors for

an injunction. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Nonetheless, we briefly note that Appellants may not have demonstrated a likelihood of irreparable injury and have not established that the public interest tilts in favor of granting the emergency motion pending appeal, for several reasons.

First, this case is meaningfully distinct from the recent cases involving COVID-19 restrictions on worship in churches and private homes. *See, e.g.*, *Tandon*, 141 S. Ct. at 1296–97. In those cases, the plaintiffs were literally prevented from exercising their religion in group settings. *Id.* Here, in contrast, Jill Doe may exercise her religion by declining to receive the vaccination. Appellants argue that the student vaccination mandate nevertheless causes irreparable injury because it "burdens" their religion by making an "important benefit" contingent upon conduct that violates their faith. *See Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 717–18 (1981). But the record is devoid of evidence indicating that SDUSD's remote-learning "alternative education program" is inferior to in-person education. And although Jill Doe states that, as she is a "preeminent athlete," the mandate would cause her irreparable injury by "dooming" her otherwise promising chances of receiving a sports scholarship, she

14

did not submit any details to support that claim.[7]  She also elected to proceed anonymously in this case—including remaining anonymous to the District and its lawyers—thereby preventing SDUSD from contesting the truth of that statement.[8] Critical facts going to the "irreparable injury" inquiry are therefore unknowable in this case.  Appellants thus have probably not carried their burden of showing that they are likely to suffer irreparable harm in the absence of preliminary relief.

Last, for completeness, we note that the public interest weighs strongly in favor of denying Appellants' motion.  The COVID-19 pandemic has claimed the lives of over three quarters of a million Americans.  *Covid Data Tracker*, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/

---

[7] The dissent states that Doe is "an athlete who believes she could earn a college scholarship if she completed a successful season."  Dissent at 2.  In her complaint, Doe claimed that "she *hopes* to draw the attention of college recruiters" and "*believes* that, *with a good season*, she *can* earn a sports scholarship."  Even setting aside her anonymity and her alleged status as a "preeminent" athlete, her belief that she can win a scholarship is speculative.  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see also Winter*, 555 U.S. at 21–22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely*" and not merely speculative (emphasis in original)).

[8] The district court temporarily allowed Appellants to proceed anonymously but indicated that it was "not persuaded" that, in the final analysis, Appellants could overcome the presumption that parties must use their real names in litigation.  *See, e.g.*, *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010).

15

#datatracker-home (last visited Dec. 1, 2021). The record indicates that vaccines are safe and effective at preventing the spread of COVID-19, and that SDUSD's vaccination mandate is therefore likely to promote the health and safety of SDUSD's students and staff, as well as the broader community. And as the Supreme Court has long recognized, "the right to practice religion freely" is not "beyond regulation in the public interest," including regulation aimed at reducing the risk of "expos[ing] the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944); *see also Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995) (noting that First Amendment rights "are different in public schools than elsewhere," including because, "[f]or their own good and that of their classmates, public school children are routinely required . . . to be vaccinated against various diseases"). The public interest therefore favors SDUSD's mandate.

In sum, Appellants have not carried their burden to establish a likelihood of success on the merits, or that they will suffer irreparable harm if this Court does not issue an injunction, or that the public interest weighs in their favor. Appellants' motion for an injunction pending appeal is therefore **DENIED**.

*Jill Doe et al. v. San Diego Unified School District et al.*, No. 21-56259

Ikuta, Circuit Judge, dissenting

Jill Doe is a junior at Scripps Ranch High School, which is part of San Diego Unified School District (hereinafter the "School District"). The School District recently implemented a COVID-19 vaccine mandate in order to prevent the transmission and spread of COVID-19 in its schools, and thus "ensure the highest-quality instruction in the safest environment possible for all students and employees." As explained in the School District's "Back to School FAQ," San Diego Unified is requiring student vaccinations because:

> Scientific evidence shows that vaccinations are an essential part of protecting our communities. Vaccines are the *most preventive* of all strategies. Unlike masking, ventilation, and testing, vaccination protects students before the *virus is introduced into the setting*, reducing disease and new mutations.

Because, as the School District asserts, vaccinations interrupt "the chain of transmission" of COVID-19, its vaccine mandate protects the health and safety of students and staff by preventing transmission from infected individuals to other students and employees.

According to the appellants' emergency motion, all students sixteen and older were required to receive their first dose of the vaccine by November 29, 2021, and their second dose by December 20, 2021. Unvaccinated students are

generally not allowed to attend in-person classes or participate in extracurricular activities.

But the School District provides exemptions to this mandate for the benefit of students who have medical reasons for not getting vaccinated. It also provides exemptions for thirty days for students who are "conditional enrollees" (meaning homeless and migratory children, foster youth, and students from military families) who enroll in the School District in the future and may have logistical difficulties in obtaining vaccines or proof of vaccination status.[1] These exempted students, despite being unvaccinated, are permitted to attend in-person classes and participate in extracurricular activities if they comply with "non-pharmaceutical interventions (*e.g.*, face coverings, regular asymptomatic testing)." No similar accommodation is offered to students who are unvaccinated for religious reasons.

Doe is a Christian and is opposed to abortion on religious grounds. Doe's faith prevents her from taking any of the COVID-19 vaccines because they were developed using aborted fetal cell lines. Doe is also an athlete who believes she could earn a college scholarship if she completed a successful season. But under

---

[1] The School District also allowed pregnant students to defer vaccination until after their child was delivered. However, the School District removed the pregnancy deferral from its policy after the majority granted Doe an emergency injunction that would be in effect "only while a 'per se' deferral of vaccination is available to pregnant students."

the School District's vaccine mandate, Doe will not be permitted to attend in-person classes and will not be able to participate in extracurricular sports.

Doe argues that the School District's vaccine mandate violates the Free Exercise Clause of the First Amendment to the United States Constitution,[2] because it includes exemptions for secular activity without a similar accommodation for religious beliefs. Because we should grant Doe's motion for an injunction pending appeal, I dissent.

## I

A party moving for preliminary injunctive relief must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of harm tips in the movant's favor; and (4) that the injunction is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). When a party seeks a preliminary injunction against the government, the balance of the equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

---

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. Amend. 1.

Additionally, this circuit employs a "sliding scale" approach to the four factors relevant to preliminary injunctive relief. *Wild Rockies*, 632 F.3d at 1131, 1134. Under the sliding scale approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## II

We should grant Doe's motion for an injunction pending appeal because Doe established that there are "serious questions going to the merits" of her Free Exercise claim and a likelihood of irreparable injury, and that the balance of hardships and public interest tip sharply in her favor. *Id.*

## A

In evaluating whether there are serious questions going to the merits, we must first determine the appropriate level of scrutiny for Doe's Free Exercise claim. "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable" to secular and religious activity alike. *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1876 (2021) (citing *Emp. Div., Dep't of Hum. Res.*

*of Or. v. Smith*, 494 U.S. 872, 878–82 (1990)).  "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."  *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67–68 (2020)).

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue."  *Id.* (citation omitted).  Courts must compare "the risks various activities" pose to the government's asserted interest.  *Id.*  A law is not generally applicable if secular activity and religious activity present "similar risks," but only the secular activity is allowed.  *Id.* (citation omitted).

In light of the Supreme Court's guidance, the framework for determining whether a law is generally applicable for purposes of the Free Exercise Clause proceeds as follows.  First, a court must identify the government's asserted interest that justifies the law at issue.  Next, the court must identify the religious activity and secular activity that the plaintiff claims are comparable for purposes of the Free Exercise Clause, but that the law treats differently.  Finally, the court must identify the risk posed by both the religious activity and the secular activity to the

government's asserted interest. If the religious activity and secular activity pose "similar risks" to the government interest but are treated differently by the law, then the law is not generally applicable. *Id.*

Here, the School District's asserted interest justifying the vaccine mandate is to "ensure the highest-quality instruction in the *safest environment* possible for all students and employees" by preventing the transmission and spread of COVID-19. The two activities that Doe claims are comparable are in-person attendance by students who are unvaccinated for religious reasons and in-person attendance by students who are unvaccinated for medical or logistical reasons.[3] These religious and secular activities pose identical risks to the government's asserted interest in ensuring the "safest environment possible for all students and employees," because both result in the presence of unvaccinated students in the classroom, who could spread COVID-19 to other students and employees.

---

[3] Doe also argues that in-person attendance by unvaccinated students who are subject to an Individualized Education Program (IEP) is comparable to in-person attendance by students who are unvaccinated for religious reasons. This is incorrect. Students with an IEP are protected by a federal law that requires the School District to follow certain procedures before it can bar students from in-person attendance. *See* 20 U.S.C. § 1415(j) (a student's IEP "shall remain" in effect pending completion of proceedings required to modify the IEP). Because the vaccine mandate is not applicable to IEP students by force of federal law, we do not take the in-person attendance of unvaccinated IEP students into account in determining whether the School District has imposed a mandate that is generally applicable.

6

But the School District's mandate treats secular and religious activity differently. Specifically, the policy allows in-person attendance by students unvaccinated for medical reasons, and in-person attendance by unvaccinated new enrollees who meet certain criteria. By contrast, the policy does not allow *any* form of in-person attendance by students unvaccinated for religious reasons. Because in-person attendance by students who are unvaccinated for religious reasons poses "similar risks" to the school environment as in-person attendance by students who are unvaccinated for medical or logistical reasons, the mandate is not generally applicable.[4] *Tandon*, 141 S. Ct. at 1296. We must therefore apply strict scrutiny to the mandate. *Id.*

In concluding otherwise, the majority fails to follow the legal framework for determining whether a law is generally applicable. First, the majority argues that the medical exemption does not undercut the mandate's general applicability

---

[4] This does not mean that a vaccine mandate cannot be generally applicable if it allows in-person attendance for any unvaccinated student. For instance, suppose the evidence established that natural immunity (*i.e.*, immunity from prior infection) is just as effective as immunity through vaccination. (There is significant dispute regarding this issue, including in this case, and so this example is offered merely as a hypothetical.) If there were such evidence, a vaccine mandate that allowed students with natural immunity to attend in-person classes would be generally applicable because students with natural immunity would pose less of a risk to the school environment than students who are unvaccinated (and therefore have *no* immunity) on religious grounds.

because it furthers the School District's interest in "protecting student health and safety" by protecting the health of the particular student claiming the medical exemption. Maj. at 7. This argument incorrectly focuses on the reasons for the exemption rather than the asserted interest that justifies the mandate. No doubt the School District has a good reason for providing an exemption for medically vulnerable students in order to protect their health, although the School District could further this interest by allowing such students to participate in the remote-learning option. But "the reasons why" the School District allows in-person attendance for some unvaccinated students are irrelevant. *Tandon*, 141 S. Ct. at 1296 (citation omitted). Instead, "[c]omparability is concerned with the risks" in-person attendance by an unvaccinated student poses to the "asserted government interest." *Id.* (citation omitted). Here, the School District's asserted interest for imposing the vaccine mandate in the first place is to ensure "the safest environment possible for all students and employees" by preventing the transmission and spread of COVID-19.[5] Allowing students who are unvaccinated for medical reasons to

---

[5] The majority argues that the School District's interest is not an interest in "ensuring the safest environment possible for all students and employees" but rather the interest in "protecting the 'health and safety' of students." Maj. at 7 n.5. The majority's quibble over wording is irrelevant in this context. The School District has made clear that its justification for the vaccine mandate is to prevent the transmission and spread of COVID-19 from infected students to other

8

attend school in person undermines this interest. Thus, the majority errs at the first step in the framework by focusing on the School District's reasons for offering an exemption, rather than the interest that the School District actually asserts to justify the mandate.

Second, the majority claims that the risks posed by in-person attendance of students unvaccinated for medical reasons are not comparable to the risks posed by students unvaccinated for religious reasons because far fewer students will seek medical exemptions than religious exemptions.[6] Maj. at 8. This rationale is entirely speculative. As the majority acknowledges, "the record does not disclose the number of students who have sought or are likely to seek a medical exemption." *Id.* Nor is there any evidence in the record about how many students

---

[5](...continued)
individuals at the school. Any medical exemption undercuts this goal, even if there are good reasons for the exemption.

[6] This claim is undercut by testimony from the School District's expert, who describes the medical exemption as having a potentially broad scope: "If a student's own physician confirms, through the same process used for other vaccinations, that an underlying medical problem *makes the vaccine unsafe for their patient*, and that physician is made available to discuss this issue with the District's physician, the student is eligible for a medical exemption." This characterization of the mandate not only casts doubt on the majority's view that the exemption covers only a small number of students, but also suggests that the medical exemption may be an example of the "individualized exemptions" that render government regulations not generally applicable. *Fulton*, 141 S. Ct. at 1877 (cleaned up).

9

would seek religious exemptions. A court may not base its rulings on such free-floating guesswork. Thus, there is no basis for the majority's claim that the School District will be flooded with requests for religious exemptions if they were offered.

The majority further errs in arguing that because the mandate gives students claiming a medical or logistical exemption only temporary relief, the risk posed by their in-person attendance is not comparable to the risk posed by the in-person attendance of students claiming a religious exemption.[7] Maj. at 8–10. But the majority identifies no authority suggesting that the School District can treat secular activity more favorably than religious activity simply because the disparate treatment is only temporary. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citation omitted) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also Armster v. U.S. Dist.*

---

[7] There is no basis for characterizing the medical exemption as temporary. According to the School District's medical exemption form (as opposed to the testimony of its expert, *see supra* at 9 n.6), students qualify for a medical exemption only if they have a "contraindication" or "precaution" recognized by the CDC or the vaccine manufacturer. The only such contraindication is a severe allergic reaction or known diagnosed allergy to the vaccine or its ingredients, and the only precaution is a history of immediate allergic reaction to other vaccines or injectable therapies. *See* CDC, Vaccines & Immunizations – Contraindications and Precautions, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#Contraindications (last updated November 29, 2021); *see also id.* Appendix B. Nothing in the record suggests that such allergies are temporary.

10

*Ct. for the Cent. Dist. of California*, 792 F.2d 1423, 1430 (9th Cir. 1986) ("A denial of a right need not be absolute before the Constitution is implicated. A temporary deprivation of a right, or a limitation on it, may violate the Constitution as well."). Even a temporary deferral would provide a religious student with some relief.

Finally, the majority argues that conditional enrollment deferrals are not comparable to a religious exemption because Doe had the same amount of time to comply with the mandate that new enrollees will have. Maj. at 9. This again confuses the *reasons* for the exemption with the *asserted interest* that justifies the mandate. While the School District may have a good reason to give new enrollees who meet certain criteria thirty days to comply with the mandate, the in-person attendance of such unvaccinated conditional enrollees poses an identical risk to the School District's asserted interest in preventing the spread of COVID-19 as the in-person attendance of unvaccinated students seeking a religious exemption. *See Tandon*, 141 S. Ct. at 1296. Therefore, the mandate is not generally applicable. Moreover, the vaccine mandate does not give even a new enrollee (*e.g.*, a student who moves to the School District next year) who seeks accommodation on religious grounds the same amount of time to comply with the mandate as a "conditional enrollee" whose logistical difficulties entitle them to a thirty-day

11

deferral. This further establishes that the vaccine mandate is not generally applicable.[8]

Because the School District's mandate is not generally applicable, strict scrutiny applies. *See id.* Strict scrutiny requires that the mandate be narrowly tailored to serve a compelling interest. *Diocese of Brooklyn*, 141 S. Ct. at 67. The School District's mandate does not satisfy this standard. "Stemming the spread of COVID–19 is unquestionably a compelling interest." *Id.* But if "the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Tandon*, 141 S. Ct. at 1297. "Otherwise, precautions that

---

[8] The majority argues that the School District's mandate and exemptions may soon be consistent with state law, because California may implement a COVID-19 vaccine mandate for schools in the "near future," and state law already requires immediate enrollment of conditional enrollees even if they have not received vaccines currently required by state law. Maj. at 10–11. Of course, speculation about a potential state mandate provides no support for the majority's position that the School District's existing mandate is constitutional. Among other things, the current proposal for a California COVID-19 vaccine mandate includes a personal beliefs exemption. Moreover, any future California COVID-19 vaccine mandate could be applied equally to conditional enrollees and students claiming religious exemptions because the California Education Code does not require the *in-person attendance* of unvaccinated conditional enrollees, who could immediately enroll and participate in online learning until they comply with the mandate.

12

suffice for other activities suffice for religious exercise too." *Id.* (citations omitted).

Here, the School District has not met its burden of showing that the "non-pharmaceutical interventions (*e.g.*, face coverings, regular asymptomatic testing)" that exempted students must follow do not "suffice for religious exercise too." *Id.* Additionally, the School District already accommodates teachers and staff who remain unvaccinated due to personal beliefs by allowing them access to the campus, which shows that the School District has determined that it can satisfy its safety interests while still allowing persons unvaccinated on religious grounds to access campus. Accordingly, the vaccine mandate is stricter than necessary to meet the School District's asserted goals, and therefore is not narrowly tailored. Finally, California's proposed mandate will allow a personal beliefs exemption, *see* Cal. Health & Safety Code §§ 120335(b)(11), 120338, which further suggests that the School District's mandate is stricter than necessary, *see Diocese of Brooklyn*, 141 S. Ct. at 67 (finding COVID restrictions not narrowly tailored where they were more restrictive than "other jurisdictions hard-hit by the pandemic").

Accordingly, I would conclude that, at a minimum, Doe has established that there are "serious questions going to the merits." *See Wild Rockies*, 632 F.3d at 1135.

13

B

Doe has also established irreparable injury because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Diocese of Brooklyn*, 141 S. Ct. at 67 (cleaned up). The majority argues that Doe fails to establish irreparable injury because Doe may exercise her religion by declining to receive the vaccination and forego attending in-person learning.[9] Maj. at 14–15. But "it is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017) (cleaned up). Moreover, in arguing that Doe's case is unlike recent cases involving COVID-19 restrictions on church gatherings because the plaintiffs in those cases were "literally prevented from exercising their religion in group settings," Maj. at 14, the majority improperly prioritizes some acts of religious exercise over others. *Cf. Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981) (explaining that the

---

[9] The majority suggests that the School District's remote-learning option is not inferior to in-person education. Maj. at 14. But if that were true, then *all* unvaccinated students should participate in remote learning. Otherwise, the School District's mandate would be severely underinclusive. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544 (1993) (finding government ordinance unconstitutionally underinclusive because it failed to prohibit secular activity that also undermined government's asserted interest).

14

"determination of what is a 'religious' belief or practice . . . is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.").[10]

Finally, the balance of hardships and public interest (which merge in this case, *see Drakes Bay*, 747 F.3d at 1092) tip sharply in Doe's favor.  Courts "have consistently recognized the significant public interest in upholding First Amendment principles," *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (cleaned up), and the School District cites no evidence that granting a student's motion for temporary relief on religious grounds "will harm the public,"

---

[10] In arguing that Doe fails to establish a likelihood of irreparable harm, the majority faults Doe for proceeding anonymously.  Maj. at 15.  But the majority fails to note the compelling reasons for doing so.  As Doe explained in her declaration:

> Standing up for my beliefs has already been an act of courage.  I learned that one of the teachers at my school read a news article to the class about this case.  In response, certain students at my school got angry and upset about what I am doing.  They're so upset that they claim that they want to find out who I am and hurt me.

The majority also concludes that Doe's inability to obtain an athletic scholarship due to the School District's mandate is too speculative to constitute irreparable injury for the purposes of a preliminary injunction.  Maj. at 15 n.7.  This argument misses the point: Doe's irreparable injury is not her inability to obtain an athletic scholarship, but the loss of her First Amendment rights, which "unquestionably constitutes irreparable injury."  *Diocese of Brooklyn*, 141 S. Ct. at 67 (cleaned up).

15

or that "public health would be imperiled if less restrictive measures were imposed," *Diocese of Brooklyn*, 141 S. Ct. at 68. To the contrary, the School District already offers campus access to some unvaccinated teachers and staff, and also to unvaccinated students if they comply with "non-pharmaceutical interventions (*e.g.*, face coverings, regular asymptomatic testing)."

Because Doe established that there are "serious questions going to the merits" and a likelihood of irreparable injury, and the balance of hardships and public interest tip sharply in her favor, we should grant Doe's motion for an injunction pending appeal. *See Wild Rockies*, 632 F.3d at 1135. I therefore dissent.